## GENERAL ELECTRIC CAPITAL CORP.

### v.

### DIRECTV, INC. & Hughes Electronics Corp.

### No. 3:97 CV 1901(PCD).

United States District Court, D. Connecticut.

Nov. 10, 1998.

James k. Robertson, Jr., Brian T. Henebry, Carmody & Torrance, Waterbury, CT, Jerold S. Solovy, Robert L. Byman, Barbara S. Steiner, James L. Thompson, Terrance J. Truax, Jenner & Block, Chicago, IL, H. Miriam Farber, Peter J. Kozlowski, Shearman & Sterling, New York, Heena Kapadia, Robert D. Gilbert, Carmody & Torrance, New Haven, CT, Barbara E. Daniele, General Electric Capital Corp., Stamford, CT, Thomas S. Martin, Stephen J. Marzen, Michael H. Strub, Jr., Stephen M. Simpson, Erik W. Luckau, Roopal R. Shah, Mary Jane Alves, Reginald R. Goeke, Shearman & Sterling, Washington, DC, Salem M. Katsh, Alan S. Goudiss, Joanna B. Shally, Sherman & Sterling, New York, Wendy L. Hufford, GE Capital Corp., Stamford, CT, for plaintiffs.

Renee Colette Redman, Hughes, Hubbard & Reed, New York, for movant.

Richard C. Robinson, Gwen P. Weisberg, Sorokin, Sorokin, Gross, Hyde & Williams, Hartford, CT, Michael E. Baumann, Mary A. Blodgett, John C. Eastman, Melissa D. Ingalls, Stacey Knox, Marcie Schwartz, James A. Nicholas, Marc Haber, Eric C. Liebeler, Kirkland & Ellis, Los Angeles, CA, Jean Reed Haynes, Lee Ann Stevenson, Kirkland & Ellis, New York for General Motors Corp.

James K. Robertson, Jr., Brian T. Henebry, Carmody & Torrance, Waterbury, CT, Deborah Stephanie Gordan, Day, Berry & Howard, Stamford, CT, Jerold S. Solovy, Robert L. Byman, Barbara S. Steiner, James L. Thompson, Terrence J. Truax, Jenner & Block, Chicago, IL, H. Miriam Farber, Peter J. Kozlowski, Shearmen & Sterling, New York, Heena Kapadia, Robert D. Gilbert, Carmody & Torrance, New Haven, CT, Thomas S. Martin, Stephen J. Marzen, Michael H. Strub, Jr., Stephen M. Simpson, Erik W. Luckau, Roopal R. Shah, Mary Jane Alves, Reginald R. Goeke, Shearman & Sterling, Washington, DC, Salem M. Katsh, Alan S. Goudiss, Joanna B. Shally, Shearman & Sterling, New York, Wendy L. Hufford, GE Capital Corp., Stamford, CT, for General Elec. Corp.

## RULING ON GECC'S MOTIONS TO COMPEL PRODUCTION OF DELOITTE & TOUCHE DOCUMENTS

MARGOLIS, United States Magistrate Judge.

Familiarity is presumed with the factual and procedural history behind this litigation, which has generated a large number of discovery disputes in a remarkably short time, with substantial judicial involvement in the resolution of these issues. (*See, e.g.,* Dkt.è36–37, 46, 59, 61, 63–65, 83, 93–94, 112, 115, 122, 130, 131, 135). To the greatest extent possible, discovery disputes have been handled on an informal basis. *See* Order, filed February 9, 1998 (Dkt.# 31).

Pursuant to deadlines established in the Scheduling Order, filed April 29, 1998 (Dkt.# 61), on September 30, 1998, plaintiff filed two motions relating to the production of documents from Deloitte & Touche— GECC's Motion to Compel Production of Deloitte & Touche Documents from defendants and brief in support (Dkt.# 162), filed under seal;[1] and GECC's Motion to Compel

---

1. Twenty-five exhibits were attached to GECC's brief, including copies of correspondence between counsel (Exhs. 1–2, 4, 6–11, 14–15, 17);

copies of GECC's subpoenas to Deloitte & Touche, dated February 4, 1998 & August 14, 1998 (Exhs. 3 & 5); copies of documents regard-

Against Deloitte & Touche and brief in support (Dkt.# 163), also filed under seal.[2] On October 19, 1998, defendants DTV and Hughes filed their brief and affidavit in opposition. (Dkt.è177–78).[3] On November 4, 1998, non-party Deloitte & Touche LLP filed its brief in opposition, also filed under seal. (Dkt.# 208).[4] On October 26, 1998, GECC filed its reply briefs, also under seal. (Dkt.è190–91. *See also* Dkt. # 213).[5]

A day-long discovery conference was held before this Magistrate Judge on October 29, 1998, to discuss these and the seven other pending discovery motions. (Dkt.# 206). During this conference, counsel agreed that Deloitte & Touche would provide the eighty-three documents at issue to the Magistrate Judge for her *in camera* review and that Deloitte & Touche need not forward the methodology documents at this time. On Monday, November 2, 1998, eighty-four documents were delivered to the Magistrate Judge's Chambers and have been docketed collectively under seal as Dkt. # 216.

For the reasons stated below, GECC's Motions to Compel are *granted in limited part and denied in large part.*

## I. DISCUSSION

Deloitte & Touche estimates that it has provided more than 9,000 pages of documents to GECC. (Dkt. # 200, at 1). There are two categories of documents at issue in the pending motions: (1) documents pertaining to defendants' loss reserves under the Program Agreement; and (2) documents pertaining to Deloitte & Touche's auditing methodology.

## A. DOCUMENTS PERTAINING TO LOSS RESERVES

The first issue is whether the documents pertaining to loss reserves are relevant. Under the Federal Rules of Civil Procedure, the scope of discovery extends to "any matter not privileged which is relevant to the subject matter in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ..." FED.R.CIV.P. 26(b)(1). The phrase " 'relevant to the subject matter involved in the pending action' ... has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

Defendants contend that loss reserve information is relevant only in cases where an insured has sued an insurer regarding coverage, in that certain information as to actions taken by insurers in setting up reserves is presumably relevant to the subject matter of the lawsuits. *Compare Sundance Cruises Corp. v. American Bureau of Shipping,* 87 Civ. 819(WK), 1992 WL 75097 at *2 (S.D.N.Y. Mar. 31, 1992) (loss reserve information not discoverable); *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.* 117 F.R.D. 283, 288 (D.D.C.1986) (same conclusion reached even in insurance coverage action); *Union Carbide Corp. v. Travelers Indem. Corp.,* 61 F.R.D. 411, 413 (W.D.Pa.

ing loss reserve Deloitte & Touche has produced for plaintiff (Exh. 12); excerpts from deposition of Larry LeMoine, DTV's Vice President of Finance, taken on August 27, 1998 (Exh. 13); copies of the Protective Order in this case (Exhs. 16–17); copies of written communications from GECC to DTV and notes of February 13, 1997 meeting (Exhs. 18–21); excerpts from deposition of Louise Wildee, DTV's Senior Vice President (Exh. 22); copy of internal DTV memorandum, dated August 22, 1996 (Exh. 23); copy of Deloitte & Touche's audit, dated August 21, 1998 (Exh. 24); and copy of agreement between GM and Hughes Electronics, dated December 16, 1997 (Exh. 25).

**2.** The same twenty-five exhibits were attached. *See supra* note 1.

**3.** Four letters between counsel were attached as Exhs. 1–4.

**4.** Two affidavits were attached—from John A. Fogarty, Director of Auditing Services & David Abdallah, Senior Audit Manager (Exhs. A–B).

**5.** Two exhibits were attached to Dkt. # 190—copy of DTV's Gross Loss Projections (Exh. A) and correspondence between counsel (Exh. B). Two exhibits were attached to Dkt. # 191—another letter between counsel (Exh. A) and excerpts from the deposition of Linda Kumagai, taken on October 6, 1998 (Exh. B).

1973) (same) *with Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 (8th Cir.1987) (in product liability case, corporate risk management documents were discoverable), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987); *Culbertson v. Shelter Mut. Ins. Co.*, Civ.A. 97–1609 & –1969, 1998 WL 743592, at *1 (E.D.La. Oct. 21, 1998) (reserve information is discoverable where claim of bad faith is made against defendant-insurer); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 192–93 (D.D.C.1998) (same); *Savoy v. Richard A. Carrier Trucking, Inc.*, 176 F.R.D. 10, 12 (D.Mass.1997) (same); *North River Ins. Co. v. Greater New York Mut. Ins. Co.*, 872 F.Supp. 1411, 1412 (E.D.Pa.1995) (same).

The Eighth Circuit permitted production of risk management documents "because they relate to issues of notice...." 816 F.2d at 404 n. 8. The question of notice is relevant here, both to the complaint and the counterclaims. In denying discovery in *Independent Petrochemical*, U.S. Magistrate Judge Arthur L. Burnett, Sr. reasoned: "[A] reserve essentially reflects an assessment of the value of a claim taking into consideration the likelihood of an adverse judgment and ... such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis." 117 F.R.D. at 288. In contrast, the documents here pertaining to loss reserves did "entail an evaluation ... based upon a thorough factual ... consideration." Thus, the loss reserves documents may be relevant here.[6]

A careful review of the eighty-four documents submitted reveals that seventy-five documents have absolutely no bearing on any issues in this litigation.

■ The next issue raised is the extent to which the nine relevant documents are privileged either under the work-product doctrine or the attorney-client privilege. As the Eighth Circuit held in *Simon* regarding the work-product doctrine:

Case reserves embody the attorney's estimate of anticipated legal expenses, settlement value, length of time to resolve the litigation, geographic considerations, and other factors. The individual case reserves set by the legal department are then used by the risk management department for a variety of reserve analysis functions, which ... were motivated by business planning purposes including budget, profit, and insurance considerations.

The work product doctrine will not protect these documents from discovery unless they were prepared in anticipation of litigation.

816 F.2d at 400–01. The Eighth Circuit held that the risk management documents were "in the nature of business planning documents" and hence were not prepared in anticipation of litigation. *Id.* at 401. *See also National Union Fire Ins. Co. v. Continental Illinois Group*, Nos. 85 C 7080 & 7081, 1988 WL 79513, at *2 (N.D.Ill. July 22, 1988) (requiring defendant's General Counsel and Executive Vice–President to answer questions regarding reserves, as "a business action taken on the advice of counsel is not immune from discovery merely because it reveals the thoughts of counsel...."). *But see Certain Underwriters at Lloyd's, London v. Fidelity & Cas. Ins. Co. of New York*, No. 89 C 876, 1998 WL 142409, at *2 (N.D.Ill. Mar. 24, 1998) (concluding that reserve recommendations, under the facts of case, were privileged as they revealed "attorney mental impressions, thoughts, and conclusions since the reserve figures were calculated only after an attorney acting in his legal capacity carefully determined the merits and value of the underlying case.").

However, the Eighth Circuit distinguished between individual case reserves and the aggregate figures:

Although the risk management documents were not themselves prepared in anticipation of litigation, they may be protected from discovery to the extent that they disclose the individual case reserves calcu-

---

**6.** As the district judge emphasized in *North River Ins. Co.*, however: "[W]e are simply deciding a discovery motion. The court is not at this time ruling on the admissibility of evidence." 872 F.Supp. at 1412.

lated by Searle's attorneys. The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation and, consequently, they are protected from discovery as opinion work product. We do not believe, however, that the aggregate reserve information reveals the individual case reserve figures to a degree that brings the aggregates within the protection of the work product doctrine. The individual figures lose their identity when combined to create the aggregate information. Furthermore, the aggregates are not even direct compilations of the individual figures; the aggregate information is the product of a formula that factors in variables such as inflation, further diluting the individual reserve figures. Certainly it would be impossible to trace back and uncover the reserve for any individual case, and it would be a dubious undertaking to attempt to derive meaningful averages from the aggregates, given the possibility of large variations in case estimates for everything from frivolous suits to those with the most serious injuries. The purpose of the work product doctrine—that of preventing discovery of a lawyer's mental impressions—is not violated by allowing discovery of documents that incorporate a lawyer's thoughts in, at best, such an indirect and diluted manner. Accordingly, we hold that the work product doctrine does not block discovery of Searle's risk management documents or the aggregate case reserve information contained therein.

*Simon*, 816 F.2d at 401–02 (citations & footnote omitted). The same demarcation was applied under the Minnesota attorney-client privilege. *Id.* at 402–04. *See also In re Pfizer Inc. Sec. Litig.*, 90 Civ. 1260(SS), 1994 WL 263610 at *1–3 (S.D.N.Y. June 6, 1994) (similarly distinguishing between privileged individual case reserve figures and non-privileged aggregate reserve figures).

Applying these standards to the nine documents here, the Magistrate Judge finds that the following five documents are both relevant and not privileged:

(1) February 20, 1996 Letter from DTV to Deloitte & Touche (defendant may redact Section 1 from Exhibit A, which concerns unrelated litigation);

(2) January 27, 1997 Deloitte & Touche Memorandum to HEC Audit Files (defendant may redact the bottom paragraph from first page, which concerns unrelated litigation, and the two-page attachment, which similarly concerns unrelated litigation);

(3) January 27, 1997 Letter from Hughes Electronics to Deloitte & Touche;

(4) March 18, 1997 Letter from Hughes Electronics to Deloitte & Touche; and

(5) May 1, 1997 Letter from Hughes Electronics to Deloitte & Touche.

Applying these same standards, the Magistrate Judge finds that the following four documents may be relevant, but are privileged, either under the work-product doctrine and/or attorney-client privilege:

(1) January 9, 1997 Letter from Nisen & Elliott to Deloitte & Touche;

(2) January 8, 1998 Letter from Kirkland & Ellis to Deloitte & Touche;

(3) January 23, 1998 Letter from Kirkland & Ellis to Deloitte & Touche; and

(4) August 21, 1998 Letter from DTV to Deloitte & Touche.

Accordingly, defense counsel shall produce these five documents to GECC's counsel *on or before November 20, 1998.*

### B. DOCUMENTS PERTAINING TO AUDITING METHODOLOGY

GECC further seeks documents from Deloitte & Touche which pertain to its auditing methodology. Deloitte & Touche argues that production of such materials would be unduly burdensome, that such documents constitute trade secrets, and that such production is not appropriate in an action in which Deloitte & Touche is only a third-party deponent, not a named defendant.

■ There is little dispute that internal audit manuals are trade secrets and thus are confidential information. *In re Mid American Waste Sys. Inc. Sec. Litig.*, Civ. 97–4888(AJL), 1997 WL 1045729, at *2 (D.N.J.

Dec. 10, 1997); *Gohler v. Wood,* 162 F.R.D. 691, 693–94 (D.Utah 1995); *Tonnemacher v. Sasak,* 155 F.R.D. 193, 195 (D.Ariz.1994); *In re Worlds of Wonder Securities Litigation,* 147 F.R.D. 214, 216 (N.D.Cal.1992); *Master Palletizer Sys. v. T.S. Ragsdale Co. Inc.,* 123 F.R.D. 351, 352 (D.Colo.1988).[7] However, in a slim majority of these cases, even ones in which defendants are named defendants in securities fraud actions, courts have declined to order production of entire internal audit manuals in the absence of evidence of wilful non-compliance or misconduct. *See, e.g., In re Mid American,* 1997 WL 1045729, at *4; *Tonnemacher,* 155 F.R.D. at 195; *In re Worlds of Wonder,* 147 F.R.D. at 216–17; *Davis v. Coopers & Lybrand,* No. 90 C 7173, 1992 WL 159504, at *1 (N.D.Ill. June 25, 1992); *Robin v. Doctors Officenters Corp.,* Nos. 84 C 10798, 85 C 8913, 1986 WL 14133 at *1–2 (N.D.Ill. Dec. 9, 1986) (no discovery ordered, especially where Arthur Young was not a defendant).

■ The plaintiffs in *Gohler* alleged fraud or reckless misconduct against defendant Deloitte & Touche in connection with an audit performed by the accounting firm. Under these circumstances, the district court held that plaintiffs had demonstrated the relevance of Deloitte's audit manuals, their need for such materials, and the safeguards afforded by the protective order. *Id.* at 694–97. *See also Fields v. Oliver's Stores, Inc.,* 87 Civ. 0894(WK), 1991 WL 44845 at *1–2 (S.D.N.Y. Mar. 2, 1990) (in action brought against Touche Ross & Co. for securities fraud, plaintiffs entitled to audit manuals, subject to appropriate protective order); *In re One Bancorp. Sec. Litig.,* 134 F.R.D. 4, 11 & n. 6 (D.Me.1991) (same).

In applying the guidelines set forth in these cases, production of Deloitte & Touche's auditing methodology is not necessary, under the circumstances presented in this case. This finding, however, is without prejudice to GECC filing a motion for reconsideration, after it deposes Deloitte & Touche

personnel, and upon the demonstration of a particularized need for such materials.

## II. CONCLUSION

Accordingly, for the reasons stated above, GECC's Motion to Compel Deloitte & Touche to Comply with Subpoena Duces Tecum and GECC's Motion to Compel Defendants to Produce Documents Relating to Deloitte & Touche (Dkt.è162–63) are *granted to the limited extent that production is ordered,* **on or before November 20, 1998,** *of the four documents specified in Part I.A. supra, denied with respect to the remaining eighty documents, and denied without prejudice to renewal regarding the documents pertaining to auditing methodology.*

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; Fed.R.Civ.P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

Because this Ruling is subject to review, *see* 28 U.S.C. § 636(b) **(written objections to ruling must be filed within ten days after service of same);** Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary of Health & Human Services,* 892 F.2d 15, 16 (2d Cir. 1989) **(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit),** Dkt. # 216 shall remain under seal pending further Court order.

---

**7.** In *Master Palletizer,* Arthur Andersen was not a named defendant. The district judge ordered production of the accounting firm's documents because they bore "directly" on defendant's de-

fense. 123 F.R.D. at 353. However, plaintiffs did not seek broad categories of documents, but only a limited number of documents prepared for its audit of defendant.