625 S.E.2d 355 (2005)
218 W.Va. 593
STATE of West Virginia ex rel. ERIE INSURANCE PROPERTY & CASUALTY COMPANY, Defendant Below, Petitioner
v.
The Honorable James P. MAZZONE, Judge of the Circuit Court of Ohio County, and Elizabeth Murfitt, Respondents.
No. 32777.
Supreme Court of Appeals of West Virginia.
Submitted October 5, 2005.
Decided November 30, 2005.
Concurring Opinion of Justice Davis December 6, 2005.
*356 Robert J. Behling, Christopher M. Jacobs, Dapper, Baldasare, Benson, Behling & Kane, P.C., Pittsburgh, PA, for the Petitioner.
James G. Bordas, III, James B. Stoneking, Bordas & Bordas, P.L.L.C., Wheeling, for the Respondent, Elizabeth Murfitt.
ALBRIGHT, Chief Justice:
As the defendant below, Erie Insurance Property & Casualty Company (hereinafter referred to as "Erie"), invokes the original jurisdiction of this Court in order to prohibit enforcement of the March 30, 2005, order of the Ohio County Circuit Court directing disclosure of claims file documents in an underlying third-party bad faith action brought by Elizabeth Murfitt, plaintiff below. The particular Erie documents at issue pertain to *357 reserve information detailing amounts and dates on which those amounts were set. Erie claims that the reserve information represents opinion work product which warrants heightened protection from disclosure. In consideration of the argument of the parties and applicable legal authorities, we grant the requested writ of prohibition on a ground other than the reason asserted.

I. Factual and Procedural Background
Ms. Murfitt initiated the underlying third-party bad faith action against Erie based on Erie's handling of a claim arising out of a motor vehicle accident involving Ms. Murfitt and Erie's insured. Within the context of the third-party bad faith suit, Ms. Murfitt served a request for production of documents upon Erie, seeking a copy of the Erie claims file relative to the accident. Erie produced a redacted version of its entire claims file and provided a detailed privilege log which identified each document withheld or redacted as well as noting whether the attorney-client privilege and work product doctrine warranted the reservation or redaction. As to its reason for objecting to disclosing reserve information within the claims file, Erie maintained that such information was protected as opinion work product.
On February 24, 2004, Ms. Murfitt filed a motion to compel disclosure of the reserve information. In response, the lower court conducted an in camera review of the documents in question, examined Erie's privilege log and heard oral argument on the motion. The court below then issued an order on March 30, 2005, wherein the court detailed which documents were subject to disclosure in whole or in part. Additionally, with respect to those documents to be produced in their entirety or in redacted version, the order stated that any information contained in the discoverable documents bearing on reserves was subject to disclosure.
On June 24, 2005, Erie filed an original jurisdiction petition in this Court seeking to prohibit the circuit court from enforcing its order. By order dated July 5, 2005, this Court granted review.

II. Standard of Review
The original jurisdiction of this Court in matters of extraordinary writs derives from Article VIII, § 3 of the West Virginia Constitution and is codified in West Virginia Code § 51-1-3 (1923) (Repl. Vol. 2000). With specific regard to cases of prohibition, West Virginia Code § 53-1-1 (1923) (Repl. Vol. 2000) provides that "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."
The order being challenged in this case involves a ruling granting discovery. While such orders are interlocutory in nature and generally only reviewable on appeal, "[w]hen a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate." Syl. Pt. 3, State ex rel. United States Fid. and Guar. Co. v. Canady, 194 W.Va. 431, 460 S.E.2d 677 (1995). This is so because the harm resulting from the disclosure of such information is often not correctable on appeal. State ex rel. Brison v. Kaufman, 213 W.Va. 624, 629, 584 S.E.2d 480, 485 (2003). Accordingly, the matter in the instant case is properly before us for review.
We will proceed in our examination of the issues raised by adhering to the standard of review put forth in syllabus point five of State ex rel. Medical Assurance of West Virginia v. Recht, 213 W.Va. 457, 583 S.E.2d 80 (2003):
A circuit court's ruling on discovery requests is reviewed for an abuse of discretion standard; but, where a circuit court's ruling turns on a misinterpretation of the West Virginia Rules of Civil Procedure, our review is plenary. The discretion that is normally given to a trial court's procedural decisions does not apply where the trial court makes no findings or applies the wrong legal standard.

*358 III. Discussion
Erie claims that the lower court exceeded its jurisdiction or legitimate powers by requiring that portions of the company's claims file pertaining to reserve information be disclosed in the underlying third-party bad faith action because reserve information constitutes non-discoverable opinion work product. We do not reach the matter of work product because our examination reveals a more fundamental weakness in the lower court's treatment of the discovery request.
The general test for determining whether information is discoverable is stated in Rule 26 of the West Virginia Rules of Civil Procedure (hereinafter referred to as "Rule 26"), which provides that:
[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
W.Va. R. Civ. P. 26(b)(1). It is clear from the face of Rule 26 that disclosure decisions involve relevancy and privilege determinations.
A threshold issue regarding all discovery requests is relevancy. This is so because "[t]he question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried." Syl. Pt. 4, in part, State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992). It is only after information is determined to be relevant that consideration is given to whether the information is subject to exclusion based upon the absolute or conditional privilege of attorney-client communications or work-product information respectively.
In the case at hand, Erie objected to disclosing reserve information in response to Ms. Murfitt's request for production of documents. Ms. Murfitt's attorneys filed a motion to compel disclosure of a complete, unredacted copy of the claims file which included the reserve information. In considering Ms. Murfitt's motion to compel, the lower court conducted an in camera review of the documents, examined Erie's privilege log and heard oral argument before it issued its order on March 30, 2005. We have only the lower court's order before us which contains no findings of fact or conclusions of law setting forth the relevancy and materiality of the reserve information sought.
Ms. Murfitt asserts in her brief that information concerning the amount of reserves set with regard to her claim is "obviously relevant" to her bad faith claim, explaining by footnote that the data is "relevant in establishing Erie's evaluation of the claim ... [and] in establishing when Erie became aware of the tortfeasor's umbrella coverage." While the relevancy of some types of information may be unmistakable, we are not convinced that reserve information merits such distinction and our research has not revealed that other jurisdictions follow such a cavalier approach to disclosure of reserve information. To the contrary, we observe that courts in other jurisdictions have found reserve information to neither be subject to automatic disclosure nor automatic protection from discovery. The Supreme Court of Colorado expressly stated that "[r]eserves are subject to the same relevancy standard for discovery as other information." Silva v. Basin Western, Inc., 47 P.3d 1184, 1189 (Colo.2002). See also Lipton v. Superior Court, 48 Cal.App.4th 1599, 56 Cal.Rptr.2d 341, 343 (1996) (reserves cannot automatically be deemed irrelevant to an insured's bad-faith claim against an insurer). This is no doubt due to the very nature of how insurance companies go about setting reserves.
Generally speaking, reserves are value approximations made by an insurance company regarding what will be sufficient "to pay all obligations for which the insurer may *359 be responsible under the policy with respect to a particular claim." Lipton at 348-49. In Maryland Casualty Company v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920), the United Supreme Court explained that:
The term "reserve" or "reserves" has a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which with accretions from interest, is set aside, "reserved," as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment.
Id. at 350, 40 S.Ct. 155. It has been said as well that "setting of reserves ... is merely a preliminary estimate of potential liability that does not necessarily take into account all of the factual and legal components that make up a particular case .... [H]ow insurers calculate reserves and what they represent depend greatly upon which insurer or surety makes the computation." Timothy M. Sukel & Mike F. Pipkin, Discovery and Admissibility of Reserves, 34 Tort & Ins. L.J. 191, 193 (1998).
Insurance companies operating in this state set reserves for each claim in compliance with statutory requirements. See e.g. W.Va.Code § 33-2-9 (2005) (Supp.2005) (examination of insurers by insurance commissioner); § 33-7-5 (1957) (Repl. Vol. 2003) (liabilities chargeable against assets to determine insurer's financial condition); § 33-8-22 (2004) (Supp. 2005) (how the amounts set aside as reserves should be maintained). While insurance statutes demand that reserves be set, the manner in which each company arrives at the figure depends on a variety of factors. One source has identified four commonly used methods to set reserves as: (1) worst-case scenario; (2) average of paid losses over a given time; (3) paid loss development; and (4) incurred loss development. See 34 Tort & Ins. L.J. 191, 194. The worst-case scenario method is described as setting "an amount of money that reflects a settlement or verdict value in the event all decisions fall against the insurer," whereas the paid loss development method predicts ultimate losses on open claims based on similarity of characteristics with resolved claims. Id. The paid loss development and incurred loss development methods involve actuarial expertise. Id. This same authority further notes that additional facts considered in employing these methods for setting reserves include an assessment of the expertise of counsel on both sides of the case, consideration of whether plaintiffs' verdicts predominate in the venue, the seriousness of the allegations and an evaluation of the particular parties involved. Id. It becomes apparent then that the methods by which an insurance company sets a reserve in a particular claim has a direct bearing on whether reserve amounts are relevant in a case like the one before us.
Relevance in the context of discovery means that the information sought is admissible evidence or is "reasonably calculated to lead to the discovery of admissible evidence." W.Va. R.Civ.P. 26(b)(1); see also Syl. Pt. 4., in part, Keplinger v. Virginia Elec. and Power Co., 208 W.Va. 11, 537 S.E.2d 632 (2000); Syl. Pt. 4, in part, State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992). It seems clear that unless the court thoroughly considers the specific way the particular insurance company in a particular case determines reserves for a particular claim, the court can not make a decision as to whether the reserve information is relevant. Take, for example, the method for calculating reserves described earlier as "average of paid losses over a given time." Serious doubt is raised regarding whether reserves developed using this approach would be relevant, that is admissible or likely lead to admissible evidence, when heavy reliance is placed on past experience rather than the particular facts in the individual open claim.
Additionally, while the method an insurance company employs to set reserves is critical to a relevancy determination, that information can not be considered in a vacuum. We have found that other jurisdictions while examining this question have looked not only at the method by which loss reserves *360 for individual claims are set by a given insurer but also at the nature of the underlying litigation and the purpose for which the information is sought. 34 Tort & Ins. L.J. at 194-95. In other words, it is widely recognized that relevancy of reserve information turns on the unique factors presented in each case. See e.g. Signature Dev. Cos., Inc. v. Royal Ins. Co. of America, 230 F.3d 1215 (10th Cir.2000); Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283 (D.D.C.1986); Leksi, Inc. v. Fed. Ins. Co., 129 F.R.D. 99 (D.N.J.1989); Champion Int'l Corp. v. Liberty Mut. Ins. Co., 128 F.R.D. 608 (S.D.N.Y.1989); Fid. & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516 (E.D.Pa.1996); Samson v. Transamerica Ins. Co., 30 Cal.3d 220, 178 Cal.Rptr. 343, 636 P.2d 32 (1981); In re Couch, 80 B.R. 512 (S.D.Cal.1987); Silva v. Basin Western, Inc., 47 P.3d 1184 (Colo.2002); Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co., 623 A.2d 1099 (Del.Super.Ct.1991); Groben v. Travelers Indem. Co., 49 Misc.2d 14, 266 N.Y.S.2d 616 (N.Y.Sup.Ct.1965); Fretz v. Mut. Benefit Ins. Co., 1998 WL 1005133 (Pa.Com.Pl.1998).
Based upon all of the above considerations, we hold that when presented with a challenge to discovery of insurance reserves information, the trial court is required under the provisions of Rule 26(b)(1) of the West Virginia Rules of Civil Procedure to make a preliminary determination of whether the requested information is relevant in that it is admissible or is reasonably calculated to lead to the discovery of admissible evidence. In making a determination in the context of discovery about the relevancy of insurance reserves information, the trial court should take into account the nature of the case, the methods used by the insurer to set the reserves and the purpose for which the information is sought, and only grant requests for disclosure when its findings of fact and conclusions of law support a determination that the specific facts of the claim in the case before it directly and primarily influenced the setting of the reserves in question.
The case at hand has not proceeded to the point where we have the information necessary to meaningfully consider whether the reserve information is relevant. We observe from our research that courts in other jurisdictions generally do not find that reserve information is relevant in cases involving insurance coverage, but have sometimes found relevancy in bad faith cases. See e.g. Lipton v. Superior Court, 48 Cal.App.4th 1599, 56 Cal.Rptr.2d 341 (1996); Tackett v. State Farm Fire & Cas., 558 A.2d 1098 (Del.Super.Ct.1988); Groben v. Travelers Indem. Co., 49 Misc.2d 14, 266 N.Y.S.2d 616, 619 (N.Y.Sup.Ct.1965) (finding "[b]ad faith is a state of mind which must be established by circumstantial evidence" and to this extent "[t]he actions of the ... [insurance company regarding reserves] are relevant."). But see Fid. & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 525 (E.D.Pa.1996) (concluding that reserve information was irrelevant because "such data would merely suggest what [the plaintiff] can already demonstrate ..., namely, that the cost of defending the ... claims increased over time"). These cases make it clear that a case-by-case examination of the factors we have previously identified is necessary for a court to be able to conclude that information involving reserves is admissible or "reasonably calculated to lead to the discovery of admissible evidence" and, as a result, is subject to disclosure. W.Va. R.Civ.P. 26(b)(1). Since the lower court neglected to address the key issue of relevancy in the instant case, we grant the writ of prohibition as requested. The issuance of this writ as to the order in question does not prohibit a subsequent proper application for disclosure of reserves supported by the required showings of the parties, analyzed by the trial court through its findings and conclusions, as indicated in this opinion.

IV. Conclusion
Based upon the foregoing, the relief in prohibition is granted to bar the enforcement of the March 30, 2005, discovery order of the Ohio County Circuit Court directing disclosure of reserve information.
Writ granted.
Justice DAVIS concurs and files a concurring opinion.
*361 DAVIS, J., concurring:

(Filed Dec. 6, 2005)
In this proceeding, the petitioner sought a writ of prohibition to preclude the trial court from enforcing its order requiring the disclosure of insurance reserve information. The petitioner argued that the insurance reserve information was protected from disclosure by the work product doctrine. The majority opinion granted the writ, but for reasons different than that argued by the petitioner. The majority opinion determined that the writ should be issued for the purpose of requiring the trial court to make a determination of whether the insurance reserve information was relevant or reasonably calculated to lead to the discovery of admissible evidence. I concur in the grounds selected by the majority opinion to grant the writ. I have chosen to write separately to make clear that even if insurance reserve information is found to be relevant or reasonably calculated to lead to the discovery of admissible evidence, it may still be found to be undiscoverable under the work product doctrine or the attorney-client privilege.[1] Both issues, in the context presented, are of matters first impression for this Court.

A. Reserve Information and the Work Product Rule
There are two types of work product set out under Rule 26(b)(3) of the West Virginia Rules of Civil Procedure: factual and opinion.[2] Under Rule 26(b)(3), factual work product refers to documents and tangible things that were prepared in anticipation of litigation or for trial (1) by or for a party, or (2) by or for that party's representative, which includes an attorney, consultant, surety, indemnitor, insurer, or agent.[3] When "`factual' work product is involved, the party demanding production must show a `substantial need' for the material and establish that the same material or its equivalent cannot be obtained through other means without `undue hardship.'" Franklin D. Cleckley, Robin J. Davis and Louis J. Palmer, Jr., Litigation Handbook on West Virginia Rules of Civil Procedure, § 26(b)(3), at 557 (2000). Opinion work product consists of mental impressions, conclusions, opinions or legal theories that are contained in factual work product. "Where opinion work product is involved, the showing required to obtain discovery is stronger than that for factual work product, because the rule states that `the court shall protect against disclosure of mental impressions, conclusions, opinions or legal theories.'" Id. Opinion work product "enjoys a nearly absolute immunity and can be discovered in only very rare and extraordinary circumstances." Id., at 557-58.[4] The cases *362 discussing requests to produce reserve information do so in the context of the opinion work product doctrine.[5]
There are two leading cases addressing the issue of the application of the opinion work product doctrine to reserve information. The two cases have reached different conclusions. For the sake of analysis, I refer to the two cases as the Simon view and the Rhone-Poulenc view.
1. Simon view. Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir.1987), cert. denied, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987), sets out principles for application of the opinion work product doctrine to reserve information. Simon was a products liability case that was reviewed by the Eighth Circuit Court of Appeals on two certified questions. One of the issues in the certified questions concerned whether the opinion work product doctrine barred discovery of risk management documents compiled by nonlawyers, but which contained "aggregate" reserve information that was derived from "individual" reserve information that was determined by lawyers. The Court of Appeals examined this issue in three parts.
First, the decision held that the risk management documents, themselves, were not prepared in anticipation of litigation, and were, therefore, not protected from disclosure by the opinion work product doctrine. Next, Simon addressed in the abstract the issue of the individual reserve information commingled with risk management documents as follows:
Although the risk management documents were not themselves prepared in anticipation of litigation, they may be protected from discovery to the extent that they disclose the individual case reserves calculated by Searle's attorneys. The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation and, consequently, they are protected from discovery as opinion work product.
Simon, 816 F.2d at 401. Finally, Simon indicated the following with respect to the aggregate reserve information that was derived from individual reserve information:
We do not believe, however, that the aggregate reserve information reveals the individual case reserve figures to a degree that brings the aggregates within the protection of the work product doctrine. The individual figures lose their identity when combined to create the aggregate information. Furthermore, the aggregates are not even direct compilations of the individual figures; the aggregate information is the product of a formula that factors in variables such as inflation, further diluting the individual reserve figures. Certainly it would be impossible to trace back and uncover the reserve for any individual case, and it would be a dubious undertaking to attempt to derive meaningful averages from the aggregates, given the possibility of large variations in case estimates for everything from frivolous suits to those with the most serious injuries. The purpose of the work product doctrinethat of preventing discovery of a lawyer's mental impressionsis not violated by allowing discovery of documents that incorporate a lawyer's thoughts in, at best, such an indirect and diluted manner. Accordingly, we hold that the work product doctrine does not block discovery of [the] risk management documents or the aggregate case reserve information contained therein.
Simon, 816 F.2d at 401-02. See also General Elec. Capital Corp. v. DIRECTV, Inc., 184 F.R.D. 32 (D.Conn.1998) (relying on Simon to require reserve information be disclosed); Gutter v. E.I. Dupont de Nemours & Co., No. 95-CV-2152, 1998 WL 2017926 (S.D.Fla. May 18, 1998) (same); Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181 (D.D.C.1998) (reserve information was not prepared in anticipation of litigation and therefore not protected by opinion work product rule); In re Pfizer Inc. Secs. Litig., No. 90 Civ. 1260(SS), 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993) (relying on Simon to require reserve information be disclosed); Champion Int'l Corp. v. Liberty Mut. Ins. Co., 128 F.R.D. 608 *363 (S.D.N.Y.1989) (reserve information was not prepared in anticipation of litigation and therefore not protected by opinion work product rule); Cook v. Wake County Hosp. Sys., Inc., 125 N.C.App. 618, 482 S.E.2d 546 (1997) (relying on Simon to find risk management documents discoverable).
In sum, Simon stands for four propositions. First, risk management documents that are not prepared in anticipation of litigation are not protected by the opinion work product rule. Second, attorney generated individual reserve information is protected by the opinion work product rule. Third, risk management documents that are not prepared in anticipation of litigation, but which contain attorney generated individual reserve information, are protected by the opinion work product rule. Fourth, aggregate reserve information that is compiled by nonlawyers, but is derived from individual reserve information compiled by lawyers, is not protected by the opinion work product rule.
2. Rhone-Poulenc view. Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 139 F.R.D. 609 (E.D.Pa.1991), established slightly different principles for the application of the opinion work product doctrine to reserve information. Rhone-Poulenc was an AIDS-related litigation brought by corporate policyholders against their insurers. One of the issues addressed in the opinion was a motion by the plaintiffs requesting information and documents concerning the reserves that the insurers had created for the underlying AIDS-related claims. In resolving this issue, the Rhone-Poulenc court addressed the issues of individual reserve information, aggregate reserve information, and risk management documents.
With respect to individual reserve information Rhone Poulenc held succinctly that:
The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation, and consequently, they are protected from discovery as opinion work-product.
Rhone-Poulenc, 139 F.R.D. at 614. Addressing the issue of aggregate reserve information derived from individual reserve information, Rhone Poulenc held:
[T]he aggregate reserve figures may give some insight into the mental processes of the lawyers in setting specific case reserves. This is inevitable, considering that these aggregates and averages are based upon the attorney's evaluations of the value of specific claims. Notably, this is not a situation where mental impressions are merely contained within and comprise a part of another document and can easily be redacted. Instead, the aggregate and average figures are derived from and necessarily embody the protected material. They could not be formulated without the attorney's initial evaluations of specific legal claims. Thus it is impossible to protect the mental impressions underlying the specific case reserves without also protecting the aggregate figures.
Rhone-Poulenc, 139 F.R.D. at 614-15. Finally, in resolving the issue of risk management documents, the decision in Rhone Poulenc addressed the issue in two ways:
Although these risk management documents being sought by plaintiffs may not have in themselves been prepared in anticipation of litigation, they may be protected from discovery to the extent that they disclose the individual case reserves calculated by defendants' attorneys....
....
It can be argued, of course, that while this Court is protecting the mental impression/opinion work product concerning the attorney's evaluation of the reserve necessary for each lawsuit that I should not grant similar protection to any risk management department's opinion work-product concerning an aggregate reserve necessary for the underlying litigation. I find no basis in Rule 26(b)(3) for this distinction. Rule 26(b)(3) requires a court to "protect against disclosure of the mental impressions, conclusions opinions or legal theories of an attorney or other representative of a party concerning the litigation." Thus protective work product is not confined to information or materials gathered or assembled by a lawyer. Instead, it includes materials gathered by any consultant, *364 surety, indemnitor, insurer, agent, or even the party itself. The only question is whether the mental impressions were documented, by either a lawyer or non-lawyer in anticipation of litigation.
Rhone-Poulenc, 139 F.R.D. at 614-15 (internal citations omitted). See also Frank Betz Assocs., Inc. v. Jim Walter Homes, Inc., 226 F.R.D. 533 (D.S.C.2005) (opinion work product rule protected disclosure of reserve information); Boston Gas Co. v. Century Indem. Co., No. Civ. A. 02-12062-RWZ, 2005 WL 2150530 (D.Mass. Aug. 31, 2005) (same); J.C. Assocs. v. Fidelity & Guar. Ins. Co., No. Civ. A. 01-2437 RJLJM, 2003 WL 1889015 (D.D.C. Apr. 15, 2003) (same); Mordesovitch v. Westfield Ins. Co., 244 F.Supp.2d 636 (S.D.W.Va.2003) (same); Chambers v. Allstate Ins. Co., 206 F.R.D. 579 (S.D.W.Va.2002) (same); Certain Underwriters at Lloyds, London v. Fidelity & Cas. Ins. Co. of New York, No. 89 C 876, 1998 WL 142409 (N.D.Ill. Mar. 24, 1998) (same); Montgomery v. Aetna Plywood, Inc., No. 95 C 3193, 1996 WL 189347 (N.D.Ill. Apr. 16, 1996) (citing to Rhone-Poulenc in finding valuation reports prepared by consultants protected by opinion work product doctrine); Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283 (D.D.C.1986) (opinion work product rule protected disclosure of reserve information); Stevens v. Hartford Ins. Co. of the Midwest, 646 So.2d 981 (La.Ct.App.1995) (opinion work product rule protected disclosure of reserve information); PECO Energy Co. v. Insurance Co. of N. Am., 852 A.2d 1230 (Pa.Super.Ct.2004) (relying on Rhone-Poulenc to find reserve information not discoverable).
In sum, Rhone-Poulenc stands for four propositions. First, individual reserve information involving input by an attorney is protected by the opinion work product rule. Second, aggregate reserve information that is compiled by nonlawyers, but is derived from individual reserve information compiled by lawyers, is protected by the opinion work product rule. Third, risk management documents that are not prepared in anticipation of litigation are protected by the opinion work product rule, to the extent they embody individual reserve information compiled by attorneys. Fourth, risk management documents that are prepared in anticipation of litigation are protected by the opinion work product rule, if compiled by attorneys or nonlawyers.
(3) Reconciling Simon and Rhone-Poulenc. Simon and Rhone-Poulenc are not completely at odds with each other. Both courts agree that individual reserve information involving input by an attorney is protected by the opinion work product rule. Further, both decisions agree that risk management documents that are not prepared in anticipation of litigation are protected by the opinion work product rule, to the extent that they embody individual reserve information compiled by attorneys.[6] The opinions disagree, however, on the issue of aggregate reserve information that is compiled by nonlawyers, but is derived from individual reserve information compiled by lawyers. Simon takes the position that such information is not protected by the opinion work product rule; while Rhone-Poulenc takes the opposite view.
I believe that the positions taken by Simon and Rhone-Poulenc, on the issue of commingled aggregate reserve information, both have merit. To the extent that aggregate reserve information is not compiled in anticipation of specific litigation, but is merely done as a routine business practice, then Simon is correct in holding that the opinion work product rule does not shield the information. *365 See Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 536, 543 (N.D.W.Va.2000) ("[It was] determined properly that these documents were not subject to the work product doctrine because they were notes `taken as a routine business practice.' A document created in the ordinary course of business is not created under the anticipation of litigation and, therefore, is not protected by the work product doctrine."). See also St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 197 F.R.D. 620, 634 (N.D.Iowa 2000) ("`[C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies. Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection.'" (quoting Piatkowski v. Abdon Callais Offshore, L.L.C., No. Civ. A. 99-3759, 2000 WL 1145825 (E.D.La. Aug. 11, 2000))).
However, if the aggregate reserve information is compiled in anticipation of specific litigation, then the position taken by Rhone-Poulenc is correct. Such information is protected by the opinion work product rule. The reasoning, as was discussed in Rhone-Poulenc in context of the risk management documents, is that Rule 26(b)(3) expressly states that the opinion work product rule applies to "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." (Emphasis added). Rule 26(b)(3) states that examples of other representatives "includ[e] the party's attorney, consultant, surety, indemnitor, insurer, or agent[.]" See J.C. Assocs. v. Fidelity & Guar. Ins. Co., No. Civ. A. 01-2437 RJLJM, 2003 WL 1889015, *2 (D.D.C.) ("[I]t would certainly seem that reserve calculations by claims adjusters qualify as work product under Fed.R.Civ.P. 26(b)(3). As that rule requires, they are prepared by the insured's agent and their raison d'etre is the existence of litigation against the insured or its anticipation.").[7]

B. Reserve Information and the Attorney-Client Privilege
In the context of asserting the attorney-client privilege to protect disclosure of reserve information, sufficient evidence must be presented to show that attorneys were "included in the procedure of establishing reserves by preparing status reports or other supporting documentation for use by those employees responsible for setting reserves." Timothy M. Sukel and Mike F. Pipkin, Discovery and Admissibility of Reserves, 34 Tort & Ins. L.J. 191, 208 (1998).[8] In syllabus point 3 of State of West Virginia ex rel. Allstate Insurance Co. v. Madden, 215 W.Va. 705, 601 S.E.2d 25 (2004), we held:
In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication *366 between the attorney and client must be identified to be confidential.
(Internal quotations and citations omitted).
Application of the attorney-client privilege to reserve information has been addressed by only one court in a meaningful manner. The decision in Simon addressed the issue narrowly in the context of whether risk management documents, containing aggregate reserve information derived from individual reserve information, were protected by the attorney-client privilege. Simon resolved the issue by stating:
Assuming arguendo that the attorney-client privilege attaches to the individual case reserve figures communicated by the legal department to the risk management department, we do not believe the privilege in turn attaches to the risk management documents simply because they include aggregate information based on the individual case reserve figures. For the reasons that we have already stated in relation to the work product doctrine, we do not believe that the aggregate information discloses the privileged communications, which we are assuming the individual reserve figures represent, to a degree that makes the aggregate information privileged. The attorney-to-client communications reflected in the risk management documents are therefore not protected by the attorney-client privilege.
Simon, 816 F.2d at 402-03. See In re Pfizer Inc. Secs. Litig., 1993 WL 561125, *6 ("[T]he applicability of the [attorney-client] privilege to correspondence from attorney to corporate client depends on whether the subject matter was individual or aggregate case reserves.... [W]e believe that documents containing aggregate information are not `predominantly concerned' with conveying legal advice, and are not therefore entitled to attorney-client privilege protection.").
I disagree with Simon's sweeping analysis. I believe that the issue of whether the attorney-client privilege attaches to aggregate reserve information depends upon the level of input by the attorney. If individual reserve information, prepared by an attorney for his/her client with the expectation of confidentiality, is not a substantial component of the aggregate reserve information, then the attorney-client privilege should not attach to the aggregate reserve information. On the other hand, the attorney-client privilege should attach to aggregate reserve information, if individual reserve information prepared by an attorney is a substantial component of the aggregate reserve information. The issue of substantiality requires a case-by-case determination.
The decision in Simon noted that it was not taking a position on "whether the attorney-client privilege in fact attaches to the individual case reserve figures, other than to note that such a determination would require analysis of whether the individual reserve figures are based on confidential information provided by [the attorney]." Simon, 816 F.2d at 403 n. 5. Other courts have addressed the issue without substantive discussion, and held that "documents containing individual case reserve figures are predominantly legal in nature. Therefore, those are [protected by the attorney-client] privilege[]." In re Pfizer Inc. Sec. Litig., 1993 WL 561125, *6. See also Boston Gas Co. v. Century Indem. Co., 2005 WL 2150530 (attorney-client privilege protected disclosure of reserve information); Coltec Indus., Inc. v. American Motorists Ins. Co., 197 F.R.D. 368 (N.D.Ill.2000) (same); Stevens v. Hartford Ins. Co. of the Midwest, 646 So.2d 981 (La.App.1995) (same); Hoechst Celanese Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa., No. Civ. A. 89C-SE-35, 1995 WL 411805 (Del.Super.Ct. Mar. 17, 1995) (same); Guaranty Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 1992 WL 78387, *2 ("[I]f reserve figures are based on information provided by an attorney, they ... may be covered by the attorney-client privilege."); Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283 (D.D.C.1986) (attorney-client privilege protected disclosure of reserve information). But see Champion Int'l Corp. v. Liberty Mut. Ins. Co., 128 F.R.D. 608 (S.D.N.Y.1989) (insurer failed to show attorney-client privilege applied to reserve information).
The above authorities make it clear that the attorney-client privilege attaches to individual *367 reserve information when the elements of that privilege are established.
In view of the foregoing, I respectfully concur.
NOTES
[1] See Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283, 288 (D.D.C.1986) ("Where the reserves have been established based on legal input, the results and the supporting papers most likely will be work product and may also reflect attorney-client privilege communications."); Guaranty Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa., No. Civ. A. 90-2695, 1992 WL 78387, *2 (E.D.La. Apr. 2, 1992) ("[W]hile courts have held that reserve information is relevant in coverage cases, courts have considered whether the reserve information sought was subject to any work product or attorney-client privilege.").
[2] Rule 26(b)(3) states:

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
[3] Our Rule 26(b)(3) is patterned after, and is identical to, federal Rule 26(b)(3).
[4] It has been further indicated that the "unwillingness [of courts] to recognize an absolute immunity for opinion work product stems from the concern that there may be rare situations ... where weighty considerations of public policy and a proper administration of justice would militate against the non-discovery of an attorney's mental impressions. Absent such a compelling showing, the attorney's opinion work product should remain immune from discovery." In re Murphy, 560 F.2d 326, 336 (8th Cir.1977).
[5] In the instant proceeding, the petitioner alleged that the opinion work product doctrine applied.
[6] The opinions also addressed slightly different issues involving risk management documents. Rhone-Poulenc found that risk management documents that are prepared in anticipation of litigation are protected by the opinion work product rule, if compiled by attorneys or nonlawyers. Whereas Simon held that risk management documents that are not prepared in anticipation of litigation are not protected by the opinion work product rule. See Carlson v. Freightliner LLC, 226 F.R.D. 343, 366 (D.Neb.2004) ("Risk management documents prepared by investigators may not themselves be considered `prepared in anticipation of litigation,' but to the extent that they disclose the individual case reserves for files and any mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim, they are privileged. Such documents are prepared in anticipation of litigation and, consequently, they are protected from discovery as opinion work product.").
[7] Before leaving this area I note another issue related to reserve information that was not discussed in either Simon or Rhone-Poulenc. That issue concerns discovery of the methodology and analysis used to determine reserve information. The court in In re Pfizer Inc. Securities Litigation, No. 90 Civ. 1260(SS), 1994 WL 263610, **1-2 (S.D.N.Y. June 6, 1994), confronted this issue and ruled as follows:

.... Having reviewed the additional documents and the applicable law, we conclude that it is appropriate to treat the methodology and analysis that form the basis for the reserve figures in the same manner as the reserve figures themselves. Therefore, if a document sets forth the methodology for calculating the case reserve for an individual claimant, it is privileged as work product (and perhaps also as an attorney-client communication). This is because the methodology reflects an attorney's thoughts, conclusions, and mental impressions as to the value of a tort claimant's suit.
However, if a document describes the methodology for determining an aggregate case reserve, it is not entitled to the protection of the work product or attorney-client privileges.
I would resolve the issue of discovery of the methodology and analysis used to determine individual and aggregate reserve information consistent with what I have indicated in the body of this concurring opinion.
[8] Here, the petitioner did not raise the issue of the attorney-client privilege protecting disclosure of the reserve information.