**PROGRESSIVE CASUALTY INSURANCE COMPANY,**
Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Vantus Bank, et al., Defendants.**

No. C12–4041–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Signed March 10, 2014.

Guy R. Cook, Grefe & Sidney, P.L.C., Des Moines, IA, Lewis K. Loss, Matthew J. Dendinger, Loss, Judge & Ward, LLP, Washington, DC, for Plaintiff.

Andrew Reidy, Geoffrey Martin Long, Dickstein Shaprio LLP, Washington, DC, Matthew D. Giles, Richard J. Kirschman, Whitfield & Eddy, PLC, William John Miller, David A. Tank, Megan Flynn, Dorsey & Whitney, LLP, Des Moines, IA, Daniel L. Hartnett, Crary–Huff–Inkster–Sheehan–Rin- genberg–Hartnett–Storm, Sioux City, IA, for Defendants.

## ORDER

LEONARD T. STRAND, United States Magistrate Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ...............................................419

II. BACKGROUND ...............................................419

III. THE CURRENT DISCOVERY MOTIONS ...............................420

IV. THE "PRIVILEGE LOGS" MOTION ...............................420
 A. Introduction ...............................................420
 B. Analysis ...............................................421

V. THE MOTION TO COMPEL ...............................................422
 A. Introduction and Applicable Standards ...............................................422
 B. Other Similar Claims ...............................................423
 C. Reinsurance Information ...............................................424
 D. Reserve Information ...............................................425
 E. Document Retention Policies ...............................................426
 F. Regulatory Filings In Other States ...............................................427

VI. CONCLUSION ...............................................428

### I. INTRODUCTION

This matter is before me on two discovery motions filed by defendant Federal Deposit Insurance Corporation, as Receiver of Vantus Bank (FDIC–R): (1) a motion (Doc. No. 40) to compel production of documents from privilege logs and (2) a motion (Doc. No. 43) to compel discovery. Plaintiff Progressive Casualty Insurance Company (Progressive) has filed resistances (Doc. Nos. 47, 48) to both motions and FDIC–R has filed a combined reply (Doc. No. 52). I conducted a telephonic hearing regarding both motions on February 26, 2014. Matthew Dendinger and Joseph Moser appeared for Progressive. Andrew Reidy and Richard Kirschman appeared for FDIC–R. David Tank and William Miller appeared for the individual defendants. The matter is now fully submitted.

### II. BACKGROUND

On September 4, 2009, the Office of Thrift Supervision closed Vantus Bank (Bank) and appointed FDIC–R as its receiver. On May 7, 2010, FDIC–R sent demand letters to the Bank's former officers and directors in which it accused them of "negligence, gross negli- gence, and/or breaches of fiduciary duties or other Wrongful Acts" in connection with various acts or omissions, including the Bank's investment decisions and loan decisions. *See* Doc. No. 2–2. FDIC–R demanded reimbursement of at least $82 million from the former officers and directors. *Id.* Apparently that demand went unsatisfied, as FDIC–R filed suit against the former officers and directors in this court on May 20, 2013. *See Federal Deposit Insurance Corp., as receiver for Vantus Bank, v. Michael W. Dosland, et al.,* No. 13–cv–4046–MWB.

Meanwhile, and in response to FDIC–R's demand letter, Progressive filed this declaratory judgment action against FDIC–R and the Bank's former officers and directors. Progressive seeks a ruling that there is no coverage for the claims asserted by FDIC–R under the "Director's & Officer's/Company Liability Insurance Policy for Financial Institutions" (Policy) issued to the Bank by Progressive. According to its complaint, Progressive relies on three policy provisions to deny coverage: (1) the "Insured versus Insured" (or "IvI") exclusion, (2) the "Loan

Loss Carve Out" and (3) the "Investment Loss Carve Out." *See* Complaint (Doc. No. 2) at 7–10. The defendants have filed answers in which they dispute Progressive's positions and raise various affirmative defenses. *See* Doc. Nos. 17, 19.

While FDIC–R's demand letter claimed that the Bank suffered losses of at least $82 million, its subsequent lawsuit against the former officers and directors asserts a claim for losses "in excess of $58 million." *See* Complaint (Doc. No. 2) in Case Number 13–cv–4046–MWB, at ¶¶ 49(h). The difference, it seems, is that FDIC–R focused its lawsuit on the Bank's investment decisions, not its loan decisions. As such, the "Loan Loss Carve Out" described in Progressive's complaint no longer appears to be at issue. Instead, the parties agree that the two Policy provisions germane to Progressive's position that no coverage exists are the "Insured versus Insured" exclusion and the "Investment Loss Carve Out." These provisions will be referred to herein, collectively, as the "Disputed Provisions."

After this action was filed, FDIC–R filed a motion (Doc. No. 10) for leave to conduct early discovery, as it was convinced that Progressive was about to file an early motion for summary judgment. I denied that motion by order (Doc. No. 24) entered July 11, 2012. While the anticipated summary judgment motion has not yet appeared, it seems inevitable in light of Progressive's position that the Disputed Provisions are unambiguous and have the effect of excluding coverage for FDIC–R's claims against the Bank's former officers and directors. At this time, however, no determination has been made in this case as to whether either or both of the Disputed Provisions are ambiguous.

### III. THE CURRENT DISCOVERY MOTIONS

*The Privilege Logs Motion.* FDIC–R filed its motion to compel production of documents from privilege logs on December 20, 2013. FDIC–R references two privilege logs produced by Progressive (filed as Doc. No. 40–2) and complains, in general, that Progressive did not provide sufficient information about various documents to support the asserted privileges. FDIC–R also argues that Progressive improperly made redactions to certain produced documents without noting those redactions in its privileged logs. FDIC–R seeks entry of an order declaring that Progressive has waived its right to assert the claimed privileges with regard to the documents at issue and compelling Progressive to produce unredacted copies of those documents.

Progressive denies that its logs are deficient. Moreover, its resistance expressed a willingness to produce unredacted versions of most of the documents at issue. In its reply, FDIC–R confirmed that those documents had been produced, leaving only fourteen documents in dispute as to the sufficiency of Progressive's privilege logs, along with six additional documents that Progressive redacted without noting them in those logs.

*The Motion to Compel.* FDIC–R filed its motion to compel on January 3, 2014. It alleges that Progressive has wrongfully refused to provide requested documents and information in five broad categories: (a) other similar claims, (b) reinsurance information, (c) reserve information, (d) Progressive's document retention policies and (e) Progressive's regulatory filings in states other than Iowa. FDIC–R contends that all of these materials are relevant because, it claims, the Disputed Provisions are ambiguous. FDIC–R argues that the requested materials are likely to contain information concerning Progressive's own interpretation of those provisions and may undercut Progressive's claim that they are unambiguous.

Progressive makes various arguments as to why these materials are not discoverable, focusing primarily on relevance, privilege and assertions that certain of the materials are proprietary and confidential. Moreover, Progressive notes that it has already produced its document retention policy.

### IV. THE "PRIVILEGE LOGS" MOTION

#### A. Introduction

As noted above, by the time FDIC–R filed its reply, the issues presented by its "privilege logs" motion had been narrowed to (1)

arguments as to the sufficiency of information Progressive has provided concerning fourteen documents and (2) FDIC–R's complaint that Progressive made redactions to six additional documents that are not described in the privilege logs. Moreover, during the hearing Progressive explained that its redactions to five of those six documents were made in order to conceal the identities of other insureds, or other insurance companies, who have no connection to this case. Counsel for FDIC–R accepted this explanation and indicated that FDIC–R no longer seeks relief concerning those five documents. As for the sixth, it was redacted to conceal reinsurance information, consistent with Progressive's objection to producing such information. Because reinsurance information is a category at issue with regard to the motion to compel discovery, the sixth document need not be analyzed here. Progressive's right to maintain its redaction of that documents depends on the outcome of the "reinsurance information" portion of that motion, which will be addressed in Section V(C), *infra*. The only remaining issues concerning the "privilege logs" motion relate to the fourteen documents for which, according to FDIC–R, Progressive has not supplied adequate information.

### B. Analysis

A party withholding otherwise-discoverable information on the basis of a claimed privilege must "expressly make the claim" and, further, must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A). While FDIC–R appears to contend that there is a definitive checklist of informational tidbits that must be provided for every document in a privilege log, the requirement is not quite so rigid. The Eighth Circuit Court of Appeals has held, for example, that a party "met its burden of providing a factual basis for asserting the privileges when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory af-fidavit of its general counsel." *Rabushka v. Crane Co.,* 122 F.3d 559, 565 (8th Cir.1997). As suggested by the applicable rule, the test is simply whether the log provides sufficient information to "enable other parties to assess the claim" of privilege. Fed.R.Civ.P. 26(b)(5)(A).

Moreover, even if a privilege log provides insufficient information, it is not clear that the appropriate remedy is to find that a waiver occurred, as FDIC–R suggests. Finding a waiver, and thus directing a party to produce privileged information, is a harsh result. *See, e.g., Rakes v. Life Investors Ins. Co. of Am.,* No. C06–0099, 2008 WL 429060, at *4 (N.D.Iowa Feb. 14, 2008) (finding privilege log to be adequate and stating that " 'waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith' ") (citations omitted); *accord Mills v. Iowa,* 285 F.R.D. 411, 413 (S.D.Iowa 2012) (noting that the court was "particularly reluctant to find waiver of privilege objections unless truly warranted because of the important policies served by the attorney-client privilege and work-product doctrine") (citations omitted); *Muro v. Target Corp.,* 250 F.R.D. 350, 359–60 (N.D.Ill.2007), *aff'd,* 580 F.3d 485 (7th Cir. 2009) ("[B]lanket waiver is not a favored remedy for technical inadequacies in a privilege log."); *Sajda v. Brewton,* 265 F.R.D. 334, 338–39 (N.D.Ind.2009) ("Even where a privilege log is inadequate, the sanction of waiver for all purportedly privileged documents is severe.... Such sanctions are disfavored absent bad faith, willfulness, or fault.").

■ I agree with these authorities. The Rules of Procedure are so deferential to the laudatory purpose of protecting recognized privileges that a party may actually recall inadvertently-produced privileged materials and, in effect, pretend that they had not been produced. *See* Fed.R.Civ.P. 26(b)(5)(B). If a party may maintain its claim of privilege even after actually producing privileged information to its opponent, I am not going to find waiver simply because I find that the party did not provide quite enough information in a privilege log. That is particularly true where, as here, there is no indication that the party acted in bad faith.

FDIC–R complains that the fourteen privilege log entries at issue fail to provide enough information for it to assess whether Progressive's claims of privilege are legitimate. It notes: (a) some entries do not provide specific information as to the author and recipients of the documents at issue, (b) some entries generally describe input from Progressive's legal department concerning policy forms but do not provide information as to whether that input was legal advice rather than mere business advice, (c) some entries just contain the title of a document and an attorney's name, with no further explanation and (d) some entries simply reference Progressive's legal department without identifying a specific attorney. According to FDIC–R, each situation presents a deficiency that prevents Progressive from meeting its burden of showing that the documents at issue are privileged.

Progressive's response is multi-faceted, and a bit contradictory. It denies that the entries are deficient. It also states that it provided all available information. However, Progressive then requests the opportunity to supplement the privilege logs to provide more information. While it is difficult to reconcile these contentions, I find (a) FDIC–R has raised legitimate concerns about the fourteen privilege log entries at issue and (b) it is appropriate to give Progressive an opportunity to supplement its privilege logs before making a final determination as to whether it is able to support is assertion of privilege as to any, or all, of the underlying documents. As such, on or before *April 4, 2014,* Progressive shall serve (but not file) a supplemental privilege log addressing each of the fourteen remaining documents at issue. That log shall, to the extent possible without disclosing the contents of each document, provide all factual information that Progressive relies upon to support its claim of privilege as to each document. Progressive shall also serve (but not file) one or more declarations supporting the factual information contained in the supplemental privilege log. Counsel for Progressive and FDIC–R shall then engage in good faith efforts to resolve their disputes concerning each of the fourteen documents at issue. After those efforts have been exhausted, FDIC–R may file a renewed motion to compel production of any or all of those documents.

## V. THE MOTION TO COMPEL

### A. Introduction and Applicable Standards

■ As noted above, this motion addresses five categories of information that FDIC–R has requested but Progressive has refused (in whole or in part) to provide. Those categories are: (a) other similar claims, (b) reinsurance information, (c) reserve information, (d) Progressive's document retention policies and (e) Progressive's regulatory filings in states other than Iowa. In considering the motion, I am mindful that "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Marook v. State Farm Mut. Auto. Ins. Co.,* 259 F.R.D. 388, 394 (N.D.Iowa 2009) (quoting *Rolscreen Co. v. Pella Prods.,* 145 F.R.D. 92, 94 (S.D.Iowa 1992)). At the same time, however, discovery is not without its limits. Discovery must not only be relevant, it must also be proportional to the needs of the case. *See, e.g.,* Fed.R.Civ.P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive … or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.").

■ Here, FDIC–R contends that the discovery at issue is relevant to certain of its defenses, including its argument that the Disputed Provisions are ambiguous. Under Iowa law, which governs this insurance dispute, "[a]mbiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty

exists concerning which of two reasonable constructions is proper." *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents,* 471 N.W.2d 859, 863 (Iowa 1991). If contract language is found to be ambiguous, then extrinsic evidence is admissible to aid in its interpretation. *Dickson v. Hubbell Realty Co.,* 567 N.W.2d 427, 430 (Iowa 1997). However, a finding of ambiguity is not required before the court can consult extrinsic evidence. *Hofmeyer v. Iowa Dist. Ct. for Fayette County,* 640 N.W.2d 225, 228 (Iowa 2001). Instead, "[a]ny determination of meaning or ambiguity must be made in light of all the circumstances, including the relations of the parties, subject matter of the transaction, preliminary negotiations, usages of trade and the course of dealing." *Id.* Thus, extrinsic evidence can be relevant to both (a) determine if contract language is ambiguous and, if so, (b) aid in the interpretation of that ambiguous language. In this case, there has been no finding as to whether either of the Disputed Provisions are actually ambiguous.

FDIC–R contends that the five categories of information at issue are discoverable because they are directed at information that is likely to be relevant to its ambiguity arguments, when those arguments are made, and to certain defenses that might arise if Progressive has taken contradictory positions concerning the Disputed Provisions in other contexts. I will address each category separately.

### B. Other Similar Claims

Progressive served the following response to FDIC–R's document request number 24:

24. All documents relating to coverage for claims by the FDIC against directors and officers of failed banks.

RESPONSE: Progressive adopts and incorporates herein by reference the general objections stated above. Progressive further objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Progressive further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections.

This response is understandable, as the scope of the request is absurd. However, FDIC–R later agreed to narrow this request to the two Disputed Provisions. Thus, FDIC–R now seeks documents relating to other claims in which Progressive has invoked the Insured versus Insured exclusion, the Investment Loss Carve Out, or both. FDIC–R argues, in general, that Progressive's analysis and application of its policy language should not vary from one claim to the next. Thus, it claims that evidence of how Progressive has interpreted and applied the Disputed Provisions in response to other claims is relevant here. Progressive disagrees, contending that this request (even as modified) is an unwarranted fishing expedition. It further argues that complying with the request would be unduly burdensome under the circumstances.

The parties agree that in a similar case pending in the District of Nevada, Progressive was ordered to review, and did review, 526 claim files that were likely to contain information relevant to the Policy provisions at issue in that case. *See Progressive Casualty Insurance Co. v. Federal Deposit Inc. Corp.,* Case No. 2:12–cv–00665, 2013 WL 5947783 (D.Nev. November 1, 2013) (referred to by the parties as the "Silver State" case). Progressive states that this process required a substantial amount of time and caused it to incur significant expenses. Progressive apparently produced over 14,000 pages of documents as a result of its court-ordered review of its claims files.

Unfortunately, the Silver State case does not involve the Investment Loss Carve Out. Thus, when Progressive reviewed its 526 claim files for that case, it was focusing on the Insured versus Insured exclusion but not the Investment Loss Carve Out. Progressive argues that it should not be forced to undertake a new, expensive review of the same files, this time to look for materials that might pertain to the Investment Loss Carve Out.

■ I find, as did the court in the Silver State litigation, that evidence of Progressive's interpretation and application of the Disputed Provisions with respect to other claims has sufficient potential relevance to be discoverable. While it is unfortunate that Progressive will be required to conduct another review of its 526 claim files, I find that Progressive has not shown that the burden of doing so will be undue. However, I further find no reason to order Progressive to take actions that are entirely duplicative of those it took in connection with the Silver State case. Thus, Progressive will be ordered to (1) search the summary documents from its "Progress" database for the 526 claims at issue to identify any claims where Progressive asserted the Investment Loss Carve Out, (2) produce the non-privileged portions of any claim files so identified and (3) provide a privilege log regarding any documents withheld from the identified claim files. Progressive shall complete this task on or before *April 21, 2014.*

### C. Reinsurance Information

Progressive served the following responses to FDIC–R's document request numbers 12 and 23:

12. All documents relating to the purchase, placement or ceding of any reinsurance by you that relate to the Policy, including all status reports provided by you to such reinsurance companies and memoranda relating to meetings with reinsurers.

RESPONSE: Progressive adopts and incorporates herein by reference the general objections stated above. Progressive further objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Progressive further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections.

23. All documents relating to any communications with any reinsurer about the Claims.

RESPONSE: Progressive adopts and incorporates herein by reference the general objections stated above. Progressive further objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Progressive further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections.

FDIC–R has now narrowed the scope of these requests to: (1) Progressive's communications with its reinsurers regarding the Disputed Provisions, (2) Progressive's communications with its reinsurers regarding the FDIC–R's claims, (3) Progressive's communications with its reinsurers regarding coverage under its standard policy form for claims by the FDIC acting as receiver and (4) any reinsurance policies that are implicated by FDIC–R's lawsuit against the Bank's officers and directors. *See* Doc. No. 52 at 7.

In support of its requests, FDIC–R points out that reinsurance is simply insurance taken out by an insurance company to cover the risks that company has assumed under policies issued to its insureds. Thus, the reinsurance policies cover the same risks covered by the underlying policy. Moreover, because reinsurers are a step removed from the insured, the direct insurer is typically the reinsurer's only source of information about actual or threatened claims. In the Silver State litigation, the court found that communications between Progressive and its reinsurers were relevant for seven distinct reasons:

(1) to determine how Progressive has interpreted the policy provisions in dispute in this lawsuit in communications with its reinsurer(s); (2) whether Progressive's interpretations of the policy provisions in dispute in this action have been consistent or inconsistent with positions taken vis-a-vis its policy holders; (3) whether Progressive and its reinsurer(s) have discussed or reached understandings with respect to whether management activity claims under the D & O policies would be covered; (4)

whether Progressive and its reinsurer(s) discussed the insureds' expectations on the scope of coverage; (5) when Progressive received notice of certain of the officers, directors, and employees' claims which Progressive maintains were not timely provided; (6) if the policy holders' claims were untimely, whether Progressive claimed it was prejudiced by the failure to provide timely notice of the potential claim; (7) whether, and to what extent, the reinsurer(s) were involved in sales and marketing of the D & O policies in dispute in this case, and if so, what the sales and marketing efforts reflect in terms of the reasonable expectations of the insureds concerning the scope of coverage.

*Progressive Cas. Ins. Co.,* 2013 WL 5947783, at \*10.

■ While Progressive makes an effort to argue that its communications with reinsurers are not relevant, that argument is unavailing. Perhaps it will happen to turn out that those communications have no particular relevance here, but they clearly have the potential to be highly relevant. I reject Progressive's relevance argument.

Progressive also argues that its communications with reinsurers are protected by the attorney-client privilege and/or the work product doctrine. To the extent that Progressive shared privileged communications, or work product materials, with its reinsurers, FDIC–R would have a strong argument that Progressive waived any privilege. *See, e.g., North River Insurance Co. v. Columbia Casualty Co.,* 1995 WL 5792, \*\*4–5 (S.D.N.Y. 1995). And, of course, blanket assertions of privilege are highly disfavored. *See, e.g., St. Paul Reins. Co. v. Commercial Fin. Corp.,* 198 F.R.D. 508, 513 (N.D.Iowa 2000). I will not deny FDIC–R's motion to compel the requested communications simply because Progressive might have arguments that some of those communications are protected by privilege.

Progressive will be ordered to supplement its response to document request numbers 12 and 23 to produce the following documents:

(1) its communications with its reinsurers regarding the Disputed Provisions, (2) its communications with its reinsurers regarding the FDIC–R's claims against the Bank's former officers and directors, (3) its communications with its reinsurers regarding coverage under its standard policy form for claims by the FDIC acting as receiver, and (4) any reinsurance policies that are implicated by FDIC–R's lawsuit against the Bank's officers and directors. If Progressive contends that any of the documents addressed by this order are protected by a privilege, it may withhold those documents and describe them in a privilege log. Progressive shall comply with this order on or before ***April 21, 2014.***[1]

### D. Reserve Information

■ Progressive served the following responses to FDIC–R's document request numbers 21 and 22:

21. All documents relating to any reserve being held by you as a result of the Claims.

RESPONSE: Progressive adopts and incorporates herein by reference the general objections stated above. Progressive further objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Progressive further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections.

22. All documents relating to your actual or potential financial exposure in connection with claims under the Policy.

RESPONSE: Progressive adopts and incorporates herein by reference the general objections stated above. Progressive further objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks documents that are neither relevant nor rea-

---

**1.** Based on this ruling, Progressive's supplemental response shall include an unredacted copy of the document addressed in Section IV(A), *supra,* that Progressive redacted in order to conceal reinsurance information.

sonably likely to lead to the discovery of admissible evidence. Progressive further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections.

FDIC–R points out that Progressive's reserve information is likely to be relevant, as it will reflect Progressive's own, internal analysis of the strength of its arguments and the extent of its exposure. While Progressive cites some cases holding that reserve information is irrelevant, I disagree. For purposes of determining the appropriate scope of discovery in this case, I cannot find that Progressive's reserve information is so clearly irrelevant to Progressive's claims and FDIC's defenses as to be undiscoverable.

Of course, this conclusion does not automatically entitle FDIC–R to discover Progressive's reserve information. As compared to communications with reinsurers, Progressive has a much-stronger argument that its reserve information is protected by the work product doctrine and/or the attorney client privilege. Progressive points out that it retained outside counsel just four days after FDIC–R sent its demand letter to the Bank's officers and directors. It states, via the declaration of its outside counsel, that its attorneys have been providing legal advice and analysis concerning this case since that time. *See* Doc. No. 48–1 at 10. As Progressive points out, many courts have found an insurer's reserve information to be off-limits under similar circumstances. *See, e.g., Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.,* No. 1:03CV 1322, 2006 WL 355289, at *2 (N.D.Ohio Feb. 15, 2006) ("Where the reserves have been established based on legal input, the results and supporting papers most likely will be work-product and may also reflect attorney-client privileged communications."); *Nicholas v. Bituminous Cas. Corp.,* 235 F.R.D. 325, 331–34 (N.D.W.Va. 2006) ("all documents concerning loss reserves . . . are protected by the work-product doctrine and are not discoverable").

To argue that internal reserve information is not protected from disclosure, FDIC–R relies on *Simon v. G.D. Searle & Co.,* 816 F.2d 397 (8th Cir.1987). However, the information at issue in *Simon* was aggregate reserve information used by the defendant for business-planning purposes. *Id.* at 401–02. The court recognized that individual case reserves calculated by the defendant's attorneys were protected by the work product privilege because they "reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim." *Id.* at 401.

 The work product privilege applies to materials prepared in anticipation of litigation. *St. Paul Reins. Co. v. Commercial Fin. Corp.,* 197 F.R.D. 620, 636 (N.D.Iowa 2000).[2] Here, FDIC–R sent letters to the Bank's former officers and directors on May 7, 2010, demanding reimbursement in the amount of at least $82 million. Progressive, having issued a Policy that at least arguably might provide coverage for some part of that claim, retained counsel four days later to advise it concerning FDIC–R's claim. I find that it was easily foreseeable, at that point, that litigation would eventually ensue. Progressive, through the declaration of its counsel, has met its burden of showing that its internal reserve information created on or after May 11, 2010, was prepared in anticipation of that litigation and, thus, is protected from disclosure. However, to the extent that Progressive generated reserve information concerning FDIC–R's claims against the Bank's officers and directors prior to May 11, 2010, Progressive has not shown that any privilege would apply. As such, Progressive will be ordered to produce documents responsive to FDIC–R's document request numbers 21 and 22, but only to the extent that those documents were generated prior to May 11, 2010. Progressive shall produce any such documents on or before ***April 21, 2014.***

### E. Document Retention Policies

Progressive served the following response to FDIC–R's document request number 42:

---

**2.** In this diversity case, the court must "apply federal law to resolve work product claims and state law to resolve attorney-client privilege

claims." *Id.* at 627 (quoting *Baker v. General Motors Corp.,* 209 F.3d 1051, 1053 (8th Cir. 2000)).

42. All documents describing your procedures or practices for the retention or destruction of documents or records.

RESPONSE: Progressive adopts and incorporates herein by reference the general objections stated above. Progressive further objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Progressive further objects to this request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections.

Progressive did ultimately produce its current document retention policy, dated February 2012, but FDIC–R contends that this is not sufficient. Instead, FDIC–R seeks prior document retention policies. It notes that the Policy at issue in this case took effect in April 2006 and that Progressive started its underwriting process in February 2006. While FDIC–R confirms that is it not currently making a spoliation of evidence argument, it contends that it is entitled to receive Progressive's document retention policies dating back to 2005 so it can evaluate possible spoliation arguments as discovery proceeds.

Progressive resists producing prior document retention policies, arguing that they are not relevant. I disagree. FDIC–R has demonstrated that it is entitled to receive Progressive's prior document retention policies. However, in light of the information provided by FDIC–R, I find that January 1, 2006, is the appropriate starting date for those policies. Progressive shall, on or before *April 21, 2014,* supplement its response to document request number 42 by producing copies of any and all document retention policies that were in effect at any time on or after January 1, 2006.

### F. Regulatory Filings In Other States

Progressive served the following responses to FDIC–R's interrogatory number 4 and document request number 40:

INTERROGATORY NO. 4: Identify all states in which Progressive has filed any version of Professional Liability Insurance Policy Form No. 5089; with respect to each such state, state whether the form was approved or denied, and identify all Persons involved in the process of filing with any regulatory authority any forms relati[ng] to D & O Liability Insurance for financial institutions.

RESPONSE: Progressive adopts and incorporates herein by reference the general objections stated above. Progressive further objects to this interrogatory on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Progressive further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections. Progressive further objects to this interrogatory to the extent it seeks information related to any rate filings made by Progressive. Subject to and without waiver of the foregoing general and specific objections, Progressive responds to this interrogatory pursuant to FRCP 33(d) by reference to documents Progressive intends to produce related to filings made by Progressive with the Iowa Insurance Division concerning "Professional Liability Insurance Policy Form No. 5089" or "D & O Liability Insurance."

40. All documents filed with any state insurance regulators relating to the meaning, construction, interpretation, or application of the policy form used in the Policy or any term or condition you rely on in this case.

RESPONSE: Progressive adopts and incorporates herein by reference the general objections stated above. Progressive further objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Progressive further objects to this request to the extent it

seeks documents protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections. Progressive further objects to this request to the extent it seeks documents related to any rate filings made by Progressive. Subject to and without waiver of the foregoing general and specific objections, Progressive will produce responsive documents filed with the Iowa Division of Insurance.

FDIC–R contends that Progressive's regulatory filings in every state are likely to show how Progressive has interpreted the policy form at issue and will be relevant to FDIC–R's defenses. FDIC–R contends that Progressive must produce all such filings since at least 2005, when Progressive modified its Insured versus Insured exclusion.

Progressive counters by noting that it has already produced all applicable regulatory filings with the State of Iowa (amounting to over 800 pages). It further states that it has produced similar filings to FDIC–R for other states in which similar lawsuits between FDIC–R and Progressive are pending. Progressive complains that FDIC–R's demand that Progressive supply its regulatory filings in every state is a classic, improper fishing expedition. It points out that although FDIC–R has already received Progressive's filings for certain states, FDIC–R has not pointed to a single document supporting its speculation that those filings might contain relevant information. Finally, Progressive notes that all such filings are public records and suggests that if FDIC–R truly believes that they contain crucial evidence, FDIC–R is free to obtain them directly from each state's regulatory agency.

 Progressive raises valid points. As noted above, discovery must not only be relevant, it must also be proportional to the needs of the case. *See* Fed.R.Civ.P. 26(b)(2)(C). While FDIC–R speculates that Progressive's regulatory filings in every state, dating back to 2005, might contain information useful to FDIC–R's case, this speculation does not come close to justifying the extreme scope of its demand. The fact that FDIC–R has been unable to point to a single filing already in its possession that has any potential relevance to the issues in this case illustrates this point.

FDIC–R's motion to compel production of Progressive's regulatory filings in states other than Iowa will be denied. FDIC–R is free to obtain those documents on its own but has not shown that it is entitled to have Progressive do this work for it.

## VI. CONCLUSION

Based on the foregoing:

1. FDIC–R's motion (Doc. No. 40) to compel production of documents from privilege logs is **granted in part** and **denied in part,** as set forth in Section IV of this order.

2. FDIC–R's motion (Doc. No. 43) to compel discovery is **granted in part** and **denied in part,** as set forth in Section V of this order.

**IT IS SO ORDERED.**